UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
DEBORAH FELDMAN,
       Plaintiff,                COMPLAINT FOR VIOLATION
                                        of the Fair Debt Collection
vs.                                      Practices Act

ERIC M. BERMAN,
ERIC M. BERMAN, P.C.              Plaintiff Demands A
and JOHN DOE 1-10, XYZ, INC 1-10,    Trial by Jury
ten names being fictitious and
unknown to the plaintiffs, the person    **08 CIV. 0357**
or parties intended being the persons
or parties, if any,
       Defendants.                                 **JUDGE ROBINSON**
------------------------------------------x

## INTRODUCTION

1.    This is an action for damages and declaratory relief by an individual for Defendants' joint, several and repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, (hereinafter "FDCPA"); New York General Business Law §349 (hereinafter "GBL"); defamation; invasion of privacy; infliction of emotional distress and defamation.

## JURISDICTION AND VENUE

2.    Jurisdiction of the Court arises under 28 U.S.C. 1331 in that this dispute involves predominant issues of federal law. Defendants violated the provisions of the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. 2201 and 2202. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. 1367. Venue in this District is proper in that Plaintiff resides here, Defendants transact business in this District and the conduct complained of occurred here.

1

## PARTIES

3. Plaintiff, DEBORAH FELDMAN, is natural person residing at 2 Woodland Place, Monsey, New York, 10952, Rockland County.

4. Defendant, ERIC M. BERMAN, ESQ, is an individual doing business at 500 West Main Street, Suite 212, Babylon, New York, 11702, and is a debt collector as defined by the FDCPA.

5. Defendant, ERIC M. BERMAN, P.C., is a collections firm doing business at 500 West Main Street, Suite 212, Babylon, New York, 11702, and is a debt collector as defined by the FDCPA.

6. John Does are various employees of Defendant Eric Berman, PC whose identity is unknown to Plaintiffs at this time but when their identity is discovered, the complaint may be amended to include them as party Defendants.

## FACTUAL ALLEGATIONS

7. In or around the beginning of November of 2006, Defendant, Eric Berman, called Plaintiff's at home, in an attempt to collect a debt allegedly owned by Joel Feldman, Plaintiff's husband.

8. Defendant himself, as well as Defendant's employees, made numerous harassing phone calls to Plaintiff in November and December of 2006. When Plaintiff did not answer the phone, Defendant would call 10 times in 5 minutes, tying up the phone lines.

9. Plaintiff eventually answered the phone, and Defendants made payment demands, threats and harassing statements to Plaintiff.

10. Plaintiff did not owe any debt, and tried to find out whom the money was owed to.

11. Defendant, Eric Berman, said he was collecting a debt and that payment had to be made, however, when Plaintiff tried to inquire about what the debt was and who it was possibly owed to, Defendant would shout, threaten and harass, not letting her speak.

12. Defendant, Eric Berman, threatened Plaintiff that should she and her husband not cooperate, they would both go to jail and their infant child would be turned over to social services. Defendant was shouting in an abusive language, not letting Plaintiff, who tried to politely interrupt him, respond.

13. After Plaintiff hung up the phone she was extremely shaken, confused and scared, and was in a daze like stance for an entire week.

14. Defendant kept calling, Plaintiff was terrified to answer the phone.

15. Defendant never sent any mail, any collection notices, never sent any validation notices whatsoever to Plaintiff or her husband.

16. On December 24, 2006 Plaintiff and her husband moved and changed their phone number in an effort to get rid of this constant harassment.

17. For a while, Defendant did not know of Plaintiff's new phone number, and there were no calls to their home from Defendant.

18. However, Defendant continued to call Plaintiff's husband at work, repeatedly threatening him. Plaintiff's husband's employer told Defendant, Eric Berman, to cease calling the company for any reason, other than to do business with them. Despite this request, Defendant continued with the calls, increasing the daily calls. Defendant's husband was forced to stop answering the phone at work, as Defendants threatening calls

3

were threatening his work. These events caused great stress and anxiety to both Plaintiff and her husband.

19. In or around January of 2007 Defendant and his employees began calling Plaintiff's former neighbors, as well as several family members. Defendant harassed and threatened them, trying to force them to disclose the new phone number of Plaintiff and her husband.

20. Defendant told those former neighbors and family of Plaintiff about that Plaintiff's husband owed an alleged debt. He threatened to subpoena them and said they would be fined, should they fail to cooperate with his demands. These harassing calls continued for a few months, until around March of 2007, when someone he called eventually disclosed Plaintiff's new phone number.

21. In March of 2007, Plaintiff visited her doctor because she suffered from strong depression symptoms, as a result of the calls. Plaintiff was tested for the possibility of several diseases, including mononucleosis and thyroid problems. Plaintiff was told that she was fine; she did not have any disease. However, Plaintiff's depression continued.

22. Plaintiff returned to the doctor, who diagnosed her with depression. The Doctor suggested anti-depressants, but then agreed that Plaintiff try therapy first.

23. During this time period, in and around March of 2007, Defendant began calling Plaintiff at her new home at inconvenient hours, before 8:00 am, and late at night. When Plaintiff asked him to stop calling he rudely responded that she has no rights in this matter.

24. In April of 2007, Plaintiff suffered from severe intestinal and bowel distress, with bleeding, vomiting and fainting. Plaintiff could not function in her daily routine, so she

went to see her doctor again. The doctor noticed blood in her stool and ordered an immediate hospitalization, where they performed many tests including a colonoscopy and CAT scans.

25.     Plaintiff was diagnosed with IBS, which was caused by stress and anxiety. Plaintiff was prescribed relaxants and Xanax, an anti-anxiety medication.

26.     Plaintiff went to other doctors, which resulted in the same diagnosis of anxiety, stress and depression.

27.     Plaintiff's depression symptoms, which began when Defendant, Eric Berman, first started threatening her, and continued throughout the entire time that Defendant relentlessly harassed her and her husband, were debilitating. Plaintiff's symptoms prevented her from functioning properly. Plaintiff struggled in the care of her infant child, was constantly sleeping and could not continue to work.

28.     As a result of Plaintiff's inability to work, Plaintiff's family started living on one income only, and could barely cover expenses like food and rent.

29.     From around the end of August, until October of 2007 the phone calls stopped. In October, Plaintiff's joint bank account was frozen.

30.     Plaintiff called the bank and was told that Alan Berman, the Ramapo Town Attorney, was responsible for freezing Plaintiff's account. Plaintiff found out that Defendant, Eric Berman, who, upon information and belief, represented to the bank that he is the "Ramapo District Attorney", obtained a Judgment against her husband. Defendant never served Plaintiff or her husband with any legal documents, and Plaintiff and her husband were not aware that they were being sued.

31. Plaintiff still picks up the mail they receive at the old address. Defendant never mailed any documents there either.

32. On the restraining notice sent to the bank, Plaintiffs old address is listed.

33. The money in the bank account was Plaintiff's and she is the primary account holder of the bank account. Plaintiff was not named in the Judgment, which was obtained against her husband.

34. Plaintiff incurred around $1000.00 in fees for the hold on the bank account and for bounced checks.

35. Upon information and belief, Defendant has a pattern and practice of harassing and violative behavior in trying to collect a debt.

## FIRST CLAIM: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

36. The allegations of paragraphs 1-35 in this pleading are incorporated as if fully rewritten herein.

37. Defendants violated 15 U.S.C. 1692b(2) by contacting third parties and stating that Plaintiff and her husband owe a debt.

38. Defendants violated 15 U.S.C. 1692b(3) by contacting third parties numerous times, including Plaintiff, who did not owe any debt, former neighbors, family members, and the employer of Plaintiff's husband. Defendant was repeatedly told to stop calling, which he blatantly disregarded. Defendant willfully violated 15 U.S.C. 1692b(3) numerous times.

39. Defendants violated 15 U.S.C. 1692c(a)(1) by calling Plaintiff at unusual hours, which caused severe inconvenience to Plaintiff. Defendants continued such calls despite being asked by Plaintiff to stop. Defendants willfully violated 15 U.S.C. 1692c(a)(1).

40. Defendants violated 15 U.S.C. 1692c(a)(3) by calling Plaintiff's husband at work, despite his employers request that they stop calling. Defendants willfully violated 15 U.S.C. 1692c(a)(3).

41. Defendants violated 15 U.S.C. 1692c(b) by contacting third parties about a debt allegedly owed by Plaintiff's husband. Defendants kept harassing Plaintiff, who did not owe any debt and kept calling family and friends of the Plaintiff, causing severe defamation, embarrassment and distress to Plaintiff.

42. Defendants violated 15 U.S.C. 1692d(1) by threatening to have Plaintiff and her husband arrested and that they will take away their child and hand him over to social services. Defendants also threatened former neighbors and friends of Plaintiff, threatening to fine and subpoena them if they do not disclose Plaintiff's phone number and address.

43. Defendants violated 15 U.S.C. 1692d(2) by using abusive language in trying to collect an alleged debt.

44. Defendants violated 15 U.S.C. 1692d(5) by causing the phone to ring numerous times, preventing the Plaintiff from using her phone to make calls and forcing her to answer their calls. Defendants unrelentingly made numerous daily calls to Plaintiff in willful violation of 15 U.S.C. 1692d(5).

45. Defendants violated the Fair Debt Collection Practices Act 15 U.S.C. 1692e(1) by threatening to have Plaintiff and her husband arrested and that they will take away their child and hand him over to social services. Defendants also threatened former neighbors

and friends of Plaintiff, threatening to fine and subpoena them if they do not disclose Plaintiff's phone number and address.

46. Defendants violated the Fair Debt Collection Practices Act 15 U.S.C. 1692e(4) by threatening to have Plaintiff and her husband arrested should they not pay the alleged debt and that they will take away their child and hand him over to social services. Defendants also froze Plaintiff's bank account despite the fact that they had no legal right to do so.

47. Defendants violated 15 U.S.C. 1692e(5) by threatening to take action they were not legally entitled to, including: to have Plaintiff and her husband arrested and that they will take away their child and hand him over to social services; threatening former neighbors and friends of Plaintiff that they will to fine and subpoena them if they do not disclose Plaintiff's phone number and address.

48. Defendants violated 15 U.S.C. 1692e(10) by misrepresenting to the Supreme Court of Rockland County that Plaintiff was served, when no such service was made and by representing to the Plaintiff's bank that he is the Rockland County District Attorney, Alan Berman.

49. Upon information and belief, Defendants violated 15 U.S.C. 1692e(14) by representing that he is Alan Berman, the Rockland Town Attorney.

## SECOND CLAIM: DECEPTIVE TRADE PRACTICES, VIOLATION OF THE NY GBL § 349

50. The allegations in paragraphs 1-49 in this pleading are incorporated as if fully rewritten herein.

51. As alleged therein, Defendants have engaged in unfair and deceptive trade and business practices and are liable unto Plaintiff under state laws for those violations.

52.     Alternatively, Defendants have, with willful intent to injure or maliciously, engaged in unfair and deceptive trade and business practices and are liable unto Plaintiff under various state laws for those violations.

### THIRD CLAIM: INFLICTION OF EMOTIONAL DISTRESS

53.     The allegations of paragraphs 1-52 in this pleading are incorporated as if fully rewritten herein.

54.     This claim is for tortuous infliction of emotional distress caused to Plaintiff by Defendants.

55.     Defendants' acts as described above were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

56.     During the course of their actions, and/or subsequent thereto, Defendants haverecklessly and/or intentionally caused severe emotional distress to Plaintiff without protection of law and at a time when it knew or should have known that its actions would do so.

57.     As a direct and proximate result thereof, Plaintiff was injured, continues to suffer such injury and may continue to suffer such injury in the future.

### FOURTH CLAIM: INVASION OF PRIVACY

58.     The allegations of paragraphs 1-57 in this pleading are incorporated as if fully rewritten herein.

59.     Defendants publicized the private affairs of Plaintiff to family, old neighbors, the employer of Plaintiff's husband and potentially others, although they had no legitimate concern with those private affairs; Defendants made an unwarranted and wrongful public disclosure of the private affairs of Plaintiff that would be objectionable to a reasonable

person of ordinary sensibilities; Defendants wrongfully intruded into the private affairs of Plaintiff in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities. At the time they did these things, Defendants knew or should have known that the they had no legal right to do so.

60. Defendants' disclosure was made intentionally, with reckless disregard to the consequential impact on Plaintiff's life, the defamation, embarrassment and distress that their actions would cause Plaintiff.

61. The information disclosed by Defendants was not of a legitimate concern to Plaintiff's family, former neighbors, or husband's employer. Defendants knew or should have known so at the time.

62. As a direct and proximate result thereof, Plaintiff's privacy has been invaded and Plaintiff has been injured, suffers such injury and may continue to suffer such injury in the future.

## FIFTH CLAIM: DEFAMATION

63. The allegations paragraphs 1-62 in this pleading are incorporated as if fully rewritten herein.

64. Defendants recklessly, maliciously and/or intentionally, disseminated false and inaccurate information concerning Plaintiff with reckless disregard for the truth of the matters asserted.

65. Defendants recklessly, maliciously and/or intentionally disclosed to numerous third parties that Plaintiff and her husband owe debts and have financial problems.

66. Defendants froze Plaintiff's bank account, thereby tarnishing Plaintiff's good credit and reputation.

67.  Defendants have defamed Plaintiff.

68.  Alternatively, Defendants have, with willful intent to injure and/or maliciously, defamed Plaintiff.

## ADDITIONAL CLAIMS

69.  The allegations paragraphs 1-68 in this pleading are incorporated as if fully rewritten herein.

70.  The above and foregoing actions, inactions and fault of Defendant, as to each and every count, have proximately caused damages to plaintiff.

71.  Defendants' constant harassment and subsequent freezing of Plaintiff's funds, has been a substantial factor in causing Plaintiff loss of quality of life, causing depression, loss of potential income, and other damage.

72.  Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, bank fees, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, anxiety, depression, stress, loss of ability to work, fear of personal and financial safety and security, attorney fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against Defendant for the following:

A. Declaratory judgment that Defendants' conduct violated the FDCPA, and declaratory and injunctive relief for Defendants' violations;

B. Declaratory judgment that Defendants' conduct violated the GBL, and declaratory and injunctive relief for Defendants' violations;

C. Actual damages as proven at trial, on each and every claim;

D. Punitive damages;

E. Injunctive relief;

F. Statutory damages, where applicable;

G. Costs and reasonable attorney fees; and

H. For such other and further relief as may be just and proper.

## PLAINTIFF DEMANDS A TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues and all claims.

DATED: December 11, 2007
Spring Valley, NY

/s/ _____
Shmuel Klein (SK 7212) Fed Court Only
Law Office of Shmuel Klein, PC
Attorneys for Plaintiff
268 ROUTE 59
Spring Valley, NY   10977
(845) 425-2510